ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  00-40109-01-JAR |
| | ) | 04-3282-JAR |
| HENRY HENDERSON, | ) | |
| | ) | |
| Defendant/Petitioner. | ) | |

## MEMORANDUM AND ORDER

The Court now considers petitioner Henry Henderson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 165).  Henderson's motion raises numerous grounds for review, including multiple claims of ineffective assistance of counsel.  The Court granted Henderson's motion to conduct an evidentiary hearing on the issue of ineffective assistance of counsel, which was held on June 23, 2006.  After considering the briefs, argument, and evidence adduced at the hearing, the Court denies Henderson's motion, as described more fully below.

### A.  Factual Background of Criminal Case

On March 30, 2000, Shawnee County Sheriff's Deputy Phil Higdon and a Cooperating Individual ("CI") went to Henderson's trailer in a trailer park located on 21st Street  to arrange a controlled purchase of crack cocaine.  The CI contacted Henderson and indicated a desire to purchase $100 of crack cocaine.  Henderson instructed his son, Tony Henderson ("Tony"), to provide the CI with the crack cocaine, and Tony then passed 2.5 grams of crack cocaine to the CI

1

in exchange for $100.  Deputy Higdon used this CI to make two more additional controlled purchases from Henderson at the trailer location between March 30 and April 6, 2000.

On April 6, 2000, Deputy Higdon obtained a search warrant for the trailer where the controlled purchases had been made.  Deputy Todd Good was in charge of executing the search.  When the deputies arrived, they placed Henderson under arrest for the three prior sales.

After Deputy Good read Henderson his rights, Henderson agreed to talk to him. Defendant advised Deputy Good that he had no knowledge of anyone selling crack cocaine in the trailer park.  Henderson told Deputy Good that he owned the trailer park, and that he did not sell crack cocaine there but did not know if Tony did.  Henderson denied being involved in the three controlled purchases.  At one point, Henderson asked Deputy Good if he could use the restroom.  When Deputy Good attempted to check Henderson's trousers for drugs, he could tell Henderson was holding something in his hand, which he dropped upon Deputy Good grabbing his hand.  Henderson dropped a plastic bag containing twenty individually packaged rocks of crack cocaine.  During this search, deputies also located a loaded 12-gauge shotgun in the kitchen area where the sales had taken place.  Deputies interviewed Loretta Keeling, a resident of the trailer park, who indicated that drugs were being sold from Henderson's trailer and that Henderson was supplying drugs to the trailer court.

Also on April 6, 2006, Deputy Higdon and other deputies executed a search pursuant to a search warrant at Henderson's house, 1166 S.W. Plass.  Henderson's wife, Rosalyn Henderson ("Rosalyn"), was the only occupant at the time of the search.  Rosalyn told the officers that she had been married to Henderson for 25 years.  After being informed that the other search was being executed at the trailer, she took Deputy Higdon to the basement of the home and pointed to

2

a shelf on the wall.  There, Deputy Higdon found approximately 33.6 grams of crack cocaine, a .22 caliber pistol, $1400 in cash, and a set of digital scales.  After Deputy Higdon asked if there were any other places where Henderson hid narcotics, Rosalyn pointed to a stove vent in the kitchen.  Deputy Higdon discovered approximately 8.9 grams of crack cocaine in one container and 4.4 grams in another container, located behind the filter in the stove vent.

Rosalyn told Deputy Higdon at this time that Henderson had been selling crack cocaine for about five years, that he generally sold from either their house on Plass or trailer #22 in the trailer park, that she had sold crack for a sack of towels, that she had last seen Henderson sell crack cocaine the day before at the trailer park, that she delivered crack cocaine to the trailer park for Henderson, and that Henderson would often trade crack for consumer goods such as ATVs, televisions, VCRs, bicycles, etc.  Rosalyn further advised that they received their crack cocaine from Lavelle Henderson.  She said that she would deliver money to Lavelle's house and buy either an "8-pack" for $1800 or a "12-pack" for $2700.[1]  She told Deputy Higdon that someone would deliver this crack to her home or the trailer about one day after she dropped off the money.  She advised that Henderson resupplied himself with crack cocaine every day and normally sold from four to six ounces every Friday at the trailer.  She further stated that her son, Tony, sold crack for Henderson and received crack in return.

Henderson, Rosalyn, and Tony were indicted on narcotics charges on November 11, 2000.  They were placed on pretrial release on December 12, 2000.  Tony and Rosalyn both pleaded guilty in February 2001.  Tony pleaded guilty to aiding and abetting Henderson in the

---

[1]Heather Reece, a witness who testified in front of the grand jury in this matter, was married to Michael Reece, an associate of Lavelle Henderson's.  She testified that she delivered crack cocaine to Henderson regularly for approximately two and one-half years.  (Gov't Ex. 2 at 22.)

sale of approximately 2.5 grams of crack cocaine and with aiding and abetting Henderson in the sale of approximately 2.66 grams of crack cocaine.  Rosalyn pleaded guilty to one charge of conspiracy to possess with intent to distribute in excess of 50 grams of crack cocaine.

On the same day as Rosalyn's plea, another search warrant was executed on trailer #22 in the trailer park.  Sheriffs found Henderson, along with three other individuals, inside the trailer. A search and subsequent patdown of Henderson revealed: $621 in cash, a plastic bag with ten individually wrapped packages of crack cocaine weighing approximately 2.7 grams, and another plastic bag containing individually wrapped rocks of crack cocaine weighing approximately 9.9 grams.  Sheriffs found another 3.9 grams of individually wrapped packages of crack cocaine in the bathroom of the trailer.

### B.  Procedural History

Henderson was arrested and on March 14, 2001 a Superseding Indictment was filed, charging him with additional counts based on the February 22, 2001 search of the trailer. Henderson pled guilty on July 25, 2001 to Counts One and Six of the Ten-Count Superseding Indictment.  Count One charged him with conspiracy to possess with intent to distribute in excess of 50 grams of crack cocaine.  Count Six charged him with possession of a firearm during and in relation to a drug trafficking crime.

On February 13, 2002, Henderson was sentenced to 292 months on Count One and a consecutive sentence of 60 months on Count Six (352 total months in custody).  The statutory maximum sentence Henderson could have received on either count was life.  He was attributed with 2285.25 grams of cocaine base based on: (1) the sale on March 30, 2000 of 2.5 grams; (2) 42.75 grams seized from the Plass residence on April 6, 2000; and (3) a 2240 gram estimate of

the total amount of cocaine base purchased by Rosalyn, according to her statements to police that she paid for eight to twelve ounces of cocaine base on approximately ten different occasions.[2] Therefore, under the United States Sentencing Guidelines ("Guidelines"), the Court calculated the base offense level at 38 and adjusted offense level at 40.  The district court denied Henderson's objections to the relevant conduct attributed to him, the denial of an adjustment for acceptance of responsibility, and the Guideline enhancement for being an organizer and leader. The Tenth Circuit affirmed Henderson's conviction and sentence on June 6, 2003.[3]

On September 1, 2004, Henderson filed this Motion to Vacate (Doc. 165).[4]  The government responded to the motion and Henderson filed a reply.  Henderson raises the following grounds for review: (1) Fifth and Sixth Amendment violations for deprivation of liberty absent an indictment on all the charges; (2) Sixth Amendment violation of the right to a trial by jury; (3) Sixth Amendment Confrontation Clause violation; (4) Sixth Amendment violation of the right to have all elements of the crime found beyond a reasonable doubt; (5) ineffective assistance of counsel; (6) newly discovered evidence based on Rosalyn's death due to drug overdose; and (7) Fifth Amendment Due Process violation due to the cumulative effect of all of the facts alleged.

Henderson filed a Motion to Supplement the record for review (Doc. 170) on March 7,

---

[2]Using the lower eight ounce figure equates to 224 grams per delivery.  224 multiplied by 10 deliveries is 2240.

[3]No. 02-3073, 2003 WL 21279538 (10th Cir. June 6, 2003).

[4]For purposes of 28 U.S.C. section 2255, the Tenth Circuit considers a judgment of conviction final once the time for filing a petition for certiorari with the Supreme Court expires, if the prisoner does not file a petition for a writ of certiorari.  *United States v. Burch*, 202 F.3d 1274 (10th Cir. 2000).  In this case, the one-year statute of limitations began to run on September 4, 2004, ninety days after the Tenth Circuit affirmed Henderson's sentence. Henderson filed this motion on September 1, 2004.  *See* S. Ct. R. 13(1).  Consequently, his motion was timely filed.

2005, along with evidence relating to his ineffective assistance of counsel claim, which this Court granted.

### C. Discussion

### 1.  Fifth and Sixth Amendment Rights to Indictment, Trial by Jury, and to have all Elements Found beyond a Reasonable Doubt

Henderson pled guilty to Count One of the Superseding Indictment, which charged him with conspiracy to distribute in excess of fifty grams of cocaine base, in violation of 21 U.S.C. § 841(a) and § 846, punishable by up to life imprisonment.  Henderson also pled guilty to Count Six of the Superseding Indictment, which charged him with possession of a firearm in relation to a drug trafficking crime, also punishable by up to life imprisonment.  Defendant argues that it was unconstitutional that he was not specifically charged with certain facts that affected his sentence under the Guidelines.  Specifically, defendant argues that he should have been charged in the Superseding Indictment with being a leader, organizer, manager, or supervisor of criminal activity, and with the amount of drugs actually attributed to him in the Presentence Investigation Report ("PSR").

Henderson's argument that his Fifth Amendment rights were violated because his sentence was enhanced based on judge-found facts not alleged in the Superseding Indictment is without merit.  In *United States v. Cotton*,[5] the Supreme Court held only that the omission from a federal indictment of a fact that enhances the statutory maximum sentence violates the Fifth Amendment.[6]  Here, the Court did not sentence Henderson to a term in excess of the statutory maximum sentence of life imprisonment, and therefore, did not commit a Fifth Amendment

---

[5]535 U.S. 625, 632 (2002).

[6]*Id.*

error.

Henderson next argues that the district court committed Sixth Amendment error by sentencing him based on facts that were not alleged in the Superseding Indictment, admitted to in the plea agreement, or proved beyond a reasonable doubt to a jury, citing *Blakely v. Washington*.[7]  *Blakely* represents an extension of the rule originally announced in *Apprendi v. New Jersey*,[8] where the Court held, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[9]  In *Blakely*, the Court applied the rule and explained that the statutory maximum under *Apprendi* "is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*,"[10] which is not necessarily the same as the maximum punishment possible under statute.[11]  On this basis, the Court struck down the Washington state sentencing scheme.

In the wake of *Blakely*, courts grappled with the issue of whether the Guidelines were also unconstitutional since they required sentencing judges to make factual findings in a fashion similar to that under the Washington scheme.[12]  The Supreme Court resolved this issue in *United States v. Booker*.[13]  In two separate majority opinions, the Court decided first, that the mandatory

---

[7]542 U.S. 296 (2004).

[8]530 U.S. 466 (2000).

[9]*Id.* at 490.

[10]*Blakely*, 542 U.S. at 302 (emphasis in original).

[11]*Id.* at 305.

[12]*See id.* at 323–25 (O'Connor, J., dissenting).

[13]543 U.S. 220 (2005).

nature of the Guidelines violates the Sixth Amendment for the same reasons that the Washington state scheme did in *Blakely*.[14]  Second, the Court decided that the appropriate remedy for this constitutional infirmity is to excise the provision from the Sentencing Reform Act that requires district courts to apply the Guidelines.[15]  Instead, the Court deemed the Guidelines advisory and explained that sentencing courts must now consider them along with the sentencing goals set forth in 18 U.S.C. § 3553(a).[16]  The applicable standard of review under the new sentencing landscape is the reasonableness of the sentence.[17]  Prior to *Booker*, the Tenth Circuit held that *Blakely* did not apply to cases on collateral review.[18]  The Tenth Circuit also has determined that neither *Blakely* nor *Booker* apply retroactively to initial motions under 28 U.S.C. § 2255.[19] Henderson's conviction and sentence was affirmed by the Tenth Circuit on June 6, 2003 (Doc. 159).  He did not file a petition for certiorari, therefore, his judgement was final 90 days after the Tenth Circuit's decision—well before the *Blakely* decision was filed on June 24, 2004. Therefore, neither *Blakely* nor *Booker* retroactively apply to Henderson.

Moreover, Henderson's sentence is not violative of *Apprendi*.  Prior to the *Blakely* and *Booker* decisions, the Tenth Circuit construed *Apprendi* as requiring a jury submission on drug quantity only when "that fact exposes the defendant to a heightened maximum sentence under §

---

[14]*Id.* at 224–25 (Stevens, J.).

[15]*Id.* at 245, 259 (Breyer, J.).

[16]*Id.* at 259.

[17]*Id.* at 261.

[18]*Leonard v. United States*, 383 F.3d 1146, 1147–48 (10th Cir. 2004); *United States v. Price*, No. 04-7058, 2004 WL 2905381, *4–5 (10th Cir. Dec. 16, 2004).

[19]*United States v. Bellamy*, 411 F.3d 1182, 1188 (10th Cir. 2005); *United States v. Price*, 400 F.3d 844, 849 (10th Cir. 2005).

8

841(b)(1)(A) or (B).  A district court may not impose a sentence in excess of the maximum set forth in 21 U.S.C. § 841(b)(1)(C) unless the benchmark quantity . . . for an enhanced penalty is alleged in the indictment in addition to being submitted to the jury and proven beyond a reasonable doubt."[20]  Because the district court sentenced Henderson below the applicable statutory maximum, there is also no violation under *Apprendi*.

### 2.  Sixth Amendment Confrontation Clause

Henderson argues that his right to confront witnesses was violated because the Court relied upon out-of-court statements by co-defendants when it made findings at the sentencing hearing on the drug quantity at issue.  Henderson cites *Crawford v. Washington*[21] for the proposition that the statements made by Rosalyn and Tony that the district court relied upon at sentencing, were improper hearsay that lacked sufficient indicia of reliability.

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[22]  Under *Ohio v. Roberts*,[23] the prevailing Confrontation Clause case prior to the *Crawford* decision, the Supreme Court held that the admission of extrajudicial statements against a defendant did not violate the Confrontation Clause if the declarant was unavailable and the statement fell under a firmly rooted hearsay exception or otherwise bore particular guarantees of

---

[20]*United States v. Jones*, 235 F.3d 1231, 1236 (10th Cir. 2000); *see United States v. Walters*, 163 Fed. App'x 674, 679–80 (10th Cir. 2006).

[21]541 U.S. 36 (2004).

[22]U.S. Const. amend. VI.

[23]448 U.S. 56 (1980).

trustworthiness.[24]  The *Crawford* decision "changed the legal landscape for determining whether the admission of certain hearsay statements violates the accused's right to confront witnesses."[25] In *Crawford*, the Court drew distinctions between testimonial and nontestimonial testimony.  It held:

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether.  Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.[26]

As Henderson recognizes, *Crawford* dealt with testimonial hearsay statements at trial and did not comment on the appropriateness of a court's reliance on hearsay statements at sentencing.  The Tenth Circuit recently held: "We see nothing in *Crawford* that requires us to depart from our precedent 'that constitutional provisions regarding the Confrontation Clause are not required to be applied during sentencing proceedings.'"[27]  Further, Tenth Circuit precedent establishes that the Federal Rules of Evidence are inapplicable at non-capital sentencing proceedings.[28]  Given this clear precedent, the Court declines to vacate Henderson's sentence under *Crawford*.

---

[24]*Id.* at 66.

[25]*Horton v. Allen*, 370 F.3d 75, 83 (1st Cir. 2004).

[26]*Crawford*, 541 U.S. at 68.

[27]*United States v. Bustamante*, –F.3d–, 2006 WL 2045837, at *3 (10th Cir. July 24, 2006) (quoting *United States v. Hershberger*, 962 F.2d 1548, 1554 (10th Cir. 1992)).

[28]*E.g.*, *Hershberger*, 962 F.2d at 1554; *United States v. Mata*, 145 Fed. App'x 276, 279 n.1 (10th Cir. 2005).

### 3.  Newly Discovered Evidence

Henderson argues that there was some evidence, not available to trial counsel, that would have established by clear and convincing evidence that "no reasonable jury would have convicted Henry Henderson of a lead role and/or possession of 2285 grams of crack cocaine." Specifically, Henderson argues that Rosalyn's death due to drug overdose subsequent to sentencing constitutes newly discovered evidence that would question her credibility.

"Newly discovered evidence" means "'evidence which could not reasonably have been presented' by the petitioner in the earlier proceeding."[29]  "[S]uch evidence must bear upon the constitutionality of the applicant's detention" when alleged in a habeas petition.[30]  Henderson does not make clear what constitutional error he alleges based on this evidence, as he does not assert a claim of actual innocence.  At best, evidence concerning Rosalyn's mental state creates questions about Rosalyn's credibility as a witness.  As the Tenth Circuit noted when affirming Henderson's sentence, Rosalyn's statements were made in person to Deputy Higdon, so he was able to observe her demeanor.  Additionally, the government presented testimony from Heather Reece, Loretta Keeling, and a CI that corroborated the information Rosalyn provided.  Even if Rosalyn's credibility was tested by this evidence during the sentencing hearing, there is no basis to assume that the district court could not have found by a preponderance of the evidence that the appropriate drug quantity based on relevant conduct should be 2285 grams of cocaine base.

### 4.  Ineffective Assistance of Counsel

---

[29]*Stephens v. Kemp*, 469 U.S. 1043, 1051 n.10 (1984) (quoting *Townsend v. Sain*, 372 U.S. 293, 317 (1963), *overruled on other grounds by Keeny v. Tamayo-Reyes*, 504 U.S. 1 (1992)).

[30]*Townsend*, 372 U.S. at 317.

In order to succeed on a claim of ineffective assistance of counsel, Henderson must meet the two-prong test set forth in *Strickland v. Washington*.[31]  Under that test, Henderson must first show that his counsel's performance was deficient because it "fell below an objective standard of reasonableness."[32]  Second, he must show that counsel's deficient performance actually prejudiced his defense.[33]  "In the context of a guilty plea, the prejudice prong requires a defendant to show that 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"[34]  In considering Henderson's claims, the Court must be mindful to "address not what is prudent or [even] appropriate, but only what is constitutionally compelled."[35]  "There is a strong presumption that counsel's performance falls within the 'wide range of professional assistance,' [and] the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged actions was not sound strategy."[36]  Counsel's performance must be considered from counsel's perspective at the time of the alleged error and in light of all the circumstances.[37]  Finally, Henderson's statements on the record, "as well as any findings made by the judge accepting the

---

[31] 466 U.S. 668 (1984).

[32] *Id.* at 688.

[33] *Id.*

[34] *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005); *United States v. Harms*, 371 F.3d 1208, 1211 (10th Cir. 2004) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

[35] *Burger v. Kemp*, 483 U.S. 776, 794 (1987); *see Bryan v. Mullin*, 335 F.3d 1207, 1224–25 (10th Cir. 2003).

[36] *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689).

[37] *Id.*; *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

plea, constitute a formidable barrier in any subsequent collateral proceedings."[38]

Henderson asserts multiple grounds for his claim of ineffective assistance of counsel against both trial counsel Rosel and Works: (1) failure to investigate the government's case; (2) failure to file appropriate motions to discover the true nature of the accusations against Henderson, causing Henderson's guilty plea to be uninformed, deficient, and prejudicial; (3) failure to consider highly relevant information regarding the primary witness against Henderson; (4) at sentencing, failure to object to the various multiple hearsay statements offered by the Government; (5) failure to request live testimony of the witnesses for cross-examination; (6) failure to challenge the government's hearsay evidence on its merits; and (7) failure to offer evidence or argument (beyond conclusory statements) regarding proper calculation of the offense level.  The Court addresses these various arguments as they may relate to both counsel Rosel and Works.

### a.  Counsel Rosel

Henderson's first three arguments concern counsels' failure to investigate the claims against him, causing them to provide deficient information that formed the basis of his guilty plea.  Henderson first argues that counsel Rosel was ineffective because he failed to file any pretrial motions and because he failed to appear at Henderson's Rule 5 hearing.  According to Henderson, had Rosel investigated the allegations and relevant facts, he would not have pled guilty.  The Court finds no merit to any ineffective assistance claim against Rosel.  First, as the government points out, although Rosel did appear at Henderson's initial Rule 5 and arraignment hearing on December 6, 2000 (Doc. 7), he did not appear for the Rule 5 hearing for the

---

[38]*United States v. Romero-Gallardo*, 113 Fed. App'x 351, 353 (10th Cir. 2004), *cert. denied*, 544 U.S. 911 (2005) (quotations omitted).

Superseding Indictment held on March 21, 2001.  The hearing was continued to April 3, 2001 for the arraignment and Rosel did appear at that time.  The minute entry for the April 3 hearing states that "Defendant wants to obtain new counsel either retained or appointed," and the court directed pretrial services to interview Henderson in order to determine whether he was able to retain counsel.  On April 11, 2001, Matthew Works was appointed to replace Rosel.

Although Rosel failed to appear at Henderson's Rule 5 hearing, the Court fails to see how this rises to the level of objective unreasonableness, or how this affected Henderson's decision to plead guilty in this matter.  Rosel was, in fact, present at Henderson's arraignment within two weeks of the Rule 5 hearing.  Henderson did not present any evidence at the hearing to suggest that actions Rosel may have taken during this time would have changed the result in this case. Conversely, the government points out that Rosel had communicated with counsel for the government after Henderson's second arrest and before the scheduled Rule 5 hearing and advised that he had a conflict with the hearing.  Within days, an arraignment hearing was held with Rosel present.

Further, Henderson does not specify what pretrial motions Rosel should have filed.  The only pretrial motion that Henderson may suggest, liberally construing this argument, would be a motion alleging a defect in the Indictment.  As the Court already determined, this motion would not have been successful because the Superseding Indictment alleged all essential elements of the drug charge.  "[T]he only incompetently litigated and defaulted Fourth Amendment claims that could lead to a reversal of the defendant's conviction on Sixth Amendment grounds are potentially outcome-determinative claims."[39]  The Court declines to hold that failing to file

---

[39]*Kimmelman*, 477 U.S. at 382 n.7.

14

pretrial motions in a criminal case is per se objectively unreasonable.[40]  Finally, Henderson is

unable to prove that had Rosel filed pretrial motions in this case, he would not have pled guilty.

Henderson falls short of producing evidence to sustain his burden of proving that counsel's

performance was objectively unreasonable or that it caused him prejudice.

### b.  Counsel Works

#### *Investigation*

Henderson alleges that his appointed trial counsel, Matthew Works, was also ineffective

for failing to investigate the facts of the case prior to the plea agreement, failing to file any

pretrial motions, and failing to communicate with potential witnesses.  Specifically, Henderson

argues that Works should have investigated the government's evidence implicating Henderson,

the possible drug quantity along with other potential relevant conduct, Rosalyn's credibility, and

"the broader context of the case," which involved a complicated sting operation.  Henderson

argues that these deficiencies were prejudicial because Works advised him to enter into the

guilty plea without an appropriate level of knowledge about the government's case, in particular,

the amount of drugs that could be attributed to him at sentencing.  Henderson concludes that had

Works known the possible sentence based on the government's allegations, Works would not

have recommended Henderson enter into the plea agreement.

The Court finds that counsel's conduct was not objectively unreasonable during the

investigation stage of the proceeding.  Henderson submitted no evidence suggesting that key

information was withheld from Works.  "This sort of tactical decision to limit the scope of pre-

---

[40]Further, the docket reflects that Henderson was scheduled to appear for a plea hearing on March 5, 2001, prior to his second arrest, but informed the district court that morning that he had changed his mind.  (Docs. 70, 71.) It is objectively reasonable that Rosel would not file pretrial motions if he understood that his client had planned to change his plea to guilty.

trial investigation merits 'a heavy measure of deference to counsel's judgments.'"[41]  "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."[42]

Works testified that he had received Rosel's file, and that he was aware that Rosalyn's testimony could be used to extrapolate a higher drug quantity at sentencing.  Further, Henderson submitted letters written by Rosalyn to Works, discussing her statements to police after the search. Further, the government contends that the information provided to defendant through discovery contained all of the information Works would have needed regarding the drug quantity involved.  In truth, Henderson's claim is not necessarily that Works failed to investigate these facts, but that he did not relay the information that he knew to Henderson before he pleaded guilty.  The Court finds that Works' investigation of the facts surrounding this case was objectively reasonable.

### Motions and Defenses

Henderson suggests Works was ineffective for failing to pursue certain motions and defenses, including: a "search and seizure argument," a marital privilege suppression argument, and a *mens rea* defense.  In order to show that Works' performance was objectively unreasonable for failing to file a motion to suppress in this case, Henderson must show that such a motion "was meritorious and that a reasonable probability exists that the verdict would have been different absent the excludable evidence."[43]  Henderson falls short of making such a

---

[41]*Petsche v. Tafoya*, 146 Fed. App'x 306, 311 (10th Cir. 2005) (quoting *Strickland*, 466 U.S. at 691).

[42]*Strickland*, 466 U.S. at 691; *see also Thao v. Conover*, 159 Fed. App'x 842, 845 (10th Cir. 2005).

[43]*Hooper v. Mullin*, 314 F.3d 1162, 1176 (10th Cir. 2002), *cert. denied*, 540 U.S. 838 (2003).

showing.  First, Henderson makes no argument about the propriety of either search of the mobile

home in this case.  Both searches were conducted pursuant to warrants and there is no evidence

in the record that those warrants were not based on probable cause or that they were defective in

some other way.  Additionally, even if Henderson believed that there was some impropriety in

the search of the Plass residence, he would have difficulty contesting that search because it too

was conducted pursuant to a warrant and Henderson would lack standing to object to the

statements made by Rosalyn.  Henderson is unable to show that a motion to suppress in this case

would have been meritorious.

Henderson also claims that Works should have pursued a marital privilege argument to

suppress the statements made by Rosalyn to Deputy Higdon.  But the Tenth Circuit has held that

"conversations between husband and wife about crimes in which they conspire or participate or,

after the fact, participate in, are not privileged marital communications for the purpose of

protection as confidential marital communications."[44]  Both Henderson and Rosalyn were

charged in the drug conspiracy; therefore, the marital privilege would have been unavailable to

Henderson.

Likewise, Henderson lacked a meritorious *mens rea* defense.  To prove conspiracy

(Count 1) in violation of 21 U.S.C. § 846, the government needed to prove, (1) an agreement

with another person to violate the law, (2) knowledge of the essential objectives of the

conspiracy, (3) knowing and voluntary involvement, and (4) interdependence.[45]  Henderson fails

to articulate exactly what "*mens rea* defense as to the cocaine seized in the search" he believes

---

[44]*United States v. Neal*, 743 F.2d 1441, 1447 (10th Cir. 1984), *cert. denied*, 470 U.S. 1086 (1985).

[45]*United States v. Carter*, 130 F.3d 1432, 1439 (10th Cir. 1997).

would have been viable.  There were three searches at issue in this case, two of which involved cocaine found on Henderson's person.  The Court finds Henderson is unable to sustain his burden of proving that this defense would be meritorious.

### Decision to Enter Guilty Plea

Henderson testified that Works did not show him the plea agreement, did not explain the legal meanings of terms in the plea agreement, and told him that he would "be back home in a year's time."  Henderson testified that Works told him that if he pled not guilty, he would be looking at a thirty to forty year sentence.  Henderson testified that Works did not explain the Sentencing Guidelines to him.  Works testified that he was able to negotiate a plea deal that allowed the government to file a motion for downward departure based on substantial assistance with another case under investigation involving Henderson's nephew, Lavelle Henderson ("Lavelle").  Had Henderson cooperated and testified against Lavelle, he would have received a reduced sentence.[46]  The government submits that it was not until Lavelle's trial was underway that Henderson offered to cooperate.  At that point, the government advised Henderson that he was too late.  Works testified that with or without cooperation, he would not have advised Henderson that he would be eligible for a one year sentence, as this was impossible even with a departure for substantial assistance.

At the plea hearing, Henderson signed the plea agreement and assured the district court on the record that he agreed to and understood its terms.  At that time, the court explained to Henderson that all relevant conduct, charged and uncharged, may be considered when determining his appropriate sentence.  The Court also advised the petitioner that despite either

---

[46]Works testified at the evidentiary hearing that he believed the government would have recommended a 25–50% reduction in his sentence if he had cooperated.

parties' recommendations, it alone would determine his sentence.  Additionally, when counsel

for the government read the factual basis for Henderson's plea, it included a recitation of the

events surrounding the Plass Street search and seizure, and Rosalyn's statements that form the

basis of the drug quantity extrapolation.  Henderson did not object, seek clarification, or advise

his attorney that he had changed his mind at any point during the plea hearing.[47]

The record reveals that Henderson entered into the plea agreement armed with the

information necessary to make a voluntary decision, taking into account the risk that he may be

sentenced based on conduct the court found to be relevant.  Further, Henderson is unable to show

that he would have pleaded not guilty but for his counsel's ineffectiveness.  The petition to plead

guilty, the plea agreement, and Henderson's statements in open court at the plea hearing all

support the fact that he knew his sentence could be based on all relevant conduct.  The Court

cured any defect in counsel's pre-plea agreement advice during its colloquy at the plea hearing.

Furthermore, even if Works had estimated Henderson's sentence incorrectly, this does not

constitute ineffective assistance of counsel, nor does "defendant's erroneous expectation, based

on his attorney's erroneous estimate . . . render a plea involuntary."[48]

In sum, Henderson's answers during the plea colloquy conducted by this Court on the

record show that he was informed as to the implications of pleading guilty.  Petitioner is "bound

by his solemn declarations in open court" which contradict the statements in his brief and at the

---

[47]The Court finds this fact notable given Henderson's prior willingness to revoke a guilty plea in March 2001 on the original Indictment.

[48]*United States v. Orr*, 165 Fed. App'x 623, 625 (10th Cir. 2006) (quoting *Wellnitz v. Page*, 420 F.2d 935, 937 (10th Cir. 1970)).

evidentiary hearing on this motion.[49]  There is no evidence in the record to suggest that if Rosel

or Works had investigated the case further, Henderson would have proceeded to trial.  Therefore,

the Court finds no prejudice to Henderson, even if Works' conduct amounted to objective

unreasonableness.

### Sentencing

Henderson argues that Works also was ineffective throughout the sentencing

proceedings.  Henderson alleges that Works failed by not investigating Rosalyn's mental

condition and credibility, not filing a motion to "unseal her records," not seeking evidentiary

support for his motion for downward departure, not making hearsay objections, and filing

conclusory objections one day before the sentencing hearing that did not contest any of the

factual allegations in the PSR.

The Court finds that Works' performance prior to and during the sentencing hearing was

not objectively unreasonable.[50]  First, as the Court has already noted, Works was aware of

Rosalyn's background, as was Henderson.  The real issue is whether Works was ineffective for

failing to utilize that information at the sentencing hearing in order to undermine Rosalyn's

credibility, in the hope that the district court would have disregarded her statements that form the

basis of the majority of the drug quantity found.  But Works did object to the drug quantity

calculation and to the enhancement for being a leader and organizer.  The latter enhancement

---

[49]*Lasiter v. Thomas*, 89 F.3d 699, 703 (10th Cir. 1996), *cert. denied*, 519 U.S. 998 (1996).

[50]At the evidentiary hearing, defense counsel elicited testimony from Works that he did not prepare his client for, nor attend the PSR interview with the probation officer.  Works further testified that this is common practice in Topeka.  Although the Court declines to find that the failure to attend the PSR interview is per se ineffective assistance of counsel, the Court is troubled by the testimony that this is common practice.  The presentence interview can have adverse consequences in application and calculation of the Guidelines and it is in the best interest of defendants that their attorneys be present.

was not dependent on Rosalyn's credibility; instead the Court overruled that objection based primarily on the events surrounding the March 30, 2000 controlled sale of cocaine.

As far as unsealing documents in this case relating to Rosalyn's plea, this Court granted Henderson's counsel permission to view these documents in camera prior to the evidentiary hearing. Since that time, Henderson has not provided this Court with any information contained in those documents that would have affected Henderson's sentence or his decision to plead guilty.

Henderson pled guilty to a conspiracy count and the factual basis for his guilty plea, stated in his plea agreement, recited facts derived from all three of the searches that ultimately formed the basis of the relevant conduct attributed to Henderson in the PSR. Because he was convicted of conspiracy, he was accountable for all "reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook."[51] The sentencing court may rely upon an estimate to determine a defendant's offense level under the Guidelines as long as the information used to determine that estimate "has some basis of support in the facts of the particular case and bears sufficient indicia of reliability."[52] As the Court has already noted, the Federal Rules of Evidence do not apply at sentencing, so the district court's consideration of hearsay evidence was not objectionable.

Henderson places great weight on the sentencing court's comment, in overruling Henderson's objection, that it "has no reason to doubt the defendant's wife and codefendant as a

---

[51]*United States v. Lauder*, 409 F.3d 1254, 1267 (10th Cir. 2005).

[52]*United States v. Dalton*, 409 F.3d 1247, 1251 (10th Cir. 2005); *see also United States v. Banda*, 168 Fed. App'x 284, 289 (10th Cir. 2006).

credible witness."[53]  This comment, however, does not discount the fact that Rosalyn's testimony was otherwise corroborated.  As the government explains in detail, the crack cocaine was found in the Plass house where she said it would be and Heather Reece's testimony to the grand jury corroborated Rosalyn's testimony that she was involved in a conspiracy whereby Reece would deliver crack cocaine to Henderson over a period of two and one-half years.  Also, Loretta Keeling corroborated the government's claim that Henderson was supplying crack cocaine to the trailer park.  The Court finds that despite any mental illness suffered by Rosalyn during the time period in question, her statements still contained the minimum indicia of reliability necessary to support the sentencing court's findings of  relevant conduct.  Even if Works' conduct was objectively unreasonable, because of this corroboration, the Court finds that the outcome would not have been different had this evidence been presented at the time of sentencing.

Henderson also argues that Works was ineffective for failing to present evidence relating to his medical condition in support of his motion for downward departure.  Henderson also suggests that it was ineffective to file this motion one day prior to sentencing.  The Court does not find Works' conduct on this matter fell below an objective standard of reasonableness.  Works did indeed file a motion for downward departure on this ground after receiving an order granting him leave to file the motion out of time.  As already discussed, success is not the measure of effective assistance.

The district court evaluated Henderson's motion under §§ 5H1.1 and 5H1.4 of the Guidelines.  Those Guideline sections state that neither age nor infirmity are ordinarily relevant in determining whether a departure is warranted.  However, in terms of age, a departure may be

---

[53](Doc. 154 at 7.)

appropriate when "the defendant is elderly and infirm."[54]  Likewise, "an extraordinary physical

impairment" may be a reason to depart.[55]  As of the time of the PSR, Henderson was 64 years old

and reported to the probation officer that "he has [had] high blood pressure for the past ten

years" and that he "has [had] suffered from dizzy spells, left side paralysis and black-outs for the

past two years."  Also, he told the probation officer that he is "currently taking medication for

his blood pressure condition, although he could not recall the name."  Henderson has not

elaborated on these alleged health problems in the present motion, nor did he present any

evidence at the evidentiary hearing.   The district court found that Henderson's age and physical

condition were not so extraordinary that they fell outside the heartland of cases that these

departure guidelines discuss.  Despite the fact that no evidence was presented at sentencing on

this issue, the Court finds that Henderson has not met his burden of showing either Works'

conduct was objectively unreasonable or that more evidence would have affected the outcome.

### *Attorney Discipline*

Henderson suggests that Works was also ineffective because he was disciplined by the

Kansas Supreme Court for ethical violations during the time that the criminal proceeding was

active and failed to relay that information to Henderson.  On April 19, 2002, Works was

suspended from the practice of law and placed on probation for a period of eighteen months,

provided that he comply with a number of conditions.[56]  At the time of the evidentiary hearing on

this matter, Works' probationary period had ended and his license fully restored, and there is no

---

[54]U.S.S.G. § 5H1.1.

[55]§ 5H1.4.

[56](Doc. 170, Attach. A.)

evidence of any ethical complaints since that time.

The Court declines to find that the fact of discipline in this case is per se ineffective assistance of counsel.  For the Supreme Court has explicitly held that "[u]nder the *Strickland* standard, breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel."[57]  During the time of these criminal proceedings, Works was admitted to practice law in Kansas and in the federal district court.  In fact, the disciplinary ruling strictly concerned infractions dealing with Works' civil caseload. His probation allowed him to *only* handle criminal defense cases under supervision by another attorney.  Moreover, Henderson does not point to any prejudice resulting from Works discipline, alone.  The Court finds that this disciplinary proceeding does not constitute ineffective assistance, especially in the absence of any independent Sixth Amendment violation.

### 5.  Cumulative Effect of Errors

Henderson finally argues that the cumulative effect of the constitutional errors in this case violates his Fifth Amendment right to due process.  A finding of cumulative error requires the Court to "aggregate[] all the errors that individually might be harmless, and . . . analyze[] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."[58]  Because the Court determines that no error occurred on the grounds raised in the habeas petition, there is no basis for a finding of cumulative error.

**IT IS THEREFORE ORDERED BY THE COURT THAT** petitioner Henry

---

[57]*Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *see also United States v. Stevens*, 978 F.2d 565, 567 (10th Cir. 1992) (holding legal assistance provided by disbarred attorney is not per se ineffective under the Sixth Amendment).

[58]*Thornburg v. Mullin*, 422 F.3d 1113, 1137 (10th Cir. 2005) (quoting *United States v. Wood*, 207 F.3d 1222, 1237 (10th Cir. 2000)).

Henderson's Motion to Vacate (Doc. 165) is **denied**.

       **IT IS SO ORDERED.**

Dated this 7<u>th</u> day of August 2006.


                    **  S/ Julie A. Robinson      **
                    **JULIE A. ROBINSON**
                    **UNITED STATES DISTRICT JUDGE**